**SO ORDERED.**

**DONE and SIGNED March 30, 2020.**



_____
**JOHN S. HODGE**
**UNITED STATES BANKRUPTCY JUDGE**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case Number: 17-80883 |
| | § | |
| Central Louisiana Home | § | Chapter 11 |
|   Healthcare, LLC | § | |
| | § | |
| Debtor | § | |

## Memorandum of Decision

The Chapter 11 debtor-corporation objected to a proof of claim filed by the Internal Revenue Service for penalties and interest due to the debtor's failure to timely: (1) file payroll tax returns, (2) pay payroll taxes, and (3) deposit payroll taxes in a government-authorized depository. The federal tax code mandates the imposition of penalties unless the taxpayer can demonstrate that such failure was occasioned by "reasonable cause and not due to willful neglect." 26 U.S.C. §§ 6651(a)(1), (a)(2), 6656(a). Whether the debtor meets this standard is the sole issue for decision.

# I.    Findings of Fact

The court makes the following findings of fact pursuant to Fed. R. Bankr. P. 7052, which incorporates Fed. R. Civ. P. 52. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such.

The facts, in pertinent part, are as follows:

1.    On August 22, 2017, Central Louisiana Home Healthcare, LLC (**Debtor**) commenced this case by filing a voluntary petition pursuant to Chapter 11 of the bankruptcy code.  Six affiliates of Debtor also filed chapter 11 petitions.  This court entered an order directing the procedural consolidation and joint administration of the related bankruptcy cases.

2.    Debtor provided home health care services in rural areas of Louisiana. A significant portion of its revenue came from Medicare, a federal health insurance program administered by the Secretary of the Department of Health and Human Services through the Centers for Medicare and Medicaid Services (**CMS**).

3.    Several years prior to the commencement of this case, a dispute arose between Debtor and a Medicare Administrative Contractor (**MAC**) in which the MAC alleged that Debtor had received payments which exceeded amounts properly payable under Medicare statutes and regulations.  The MAC contended that Debtor was liable to CMS for approximately $6 million for alleged overpayments. CMS recouped most of the alleged overpayments by offsetting against its payments to Debtor which were then due.

4.    At the time Debtor filed its Disclosure Statement in June 2018, the

remaining balance owed to CMS for alleged overpayments was $1,882,016.24, meaning that CMS had recouped, or Debtor had paid, approximately $4 million.

5. Debtor challenged unfavorable Medicare determinations at multiple levels. These challenges culminated in a lawsuit, "*Central Louisiana Home Health Care, L.L.C. versus Thomas A. Price*," Case No. 1:17-CV-00346 in the United States District Court, Western District of Louisiana (the "**Litigation**").

6. After participating in a review and appellate process spanning years (from 2012 until 2019), Debtor received a favorable ruling – specifically, that Medicare's auditor committed "abuse of the incentive program compensating an auditor with a percentage of the recovery amount it finds" – yielding a recovery to Debtor in September 2019, of nearly $2.5 million from the Secretary of the United States Department of Health and Human Services.

7. While Debtor challenged unfavorable Medicare determinations, it failed to timely file payroll tax returns, pay payroll taxes, and deposit payroll taxes in a government-authorized depository. Specifically, Debtor failed to timely:

a. File Form 941 (Employer's Quarterly Federal Tax Return) for the 1st Quarter of 2014, 2nd Quarter of 2015 and 2nd Quarter of 2016;

b. Deposit employment taxes owed to the United States for 2014 and 2015, the 2nd and 4th Quarters for 2016 and the 1st, 2nd and 3rd Quarters for 2017; and

c. Pay its tax liability owed to the United States for 2014 and 2015, the 2nd and 4th Quarters for 2016 and the 1st, 2nd and 3rd Quarters for 2017.

8. Pursuant to the order confirming the plan (Doc. 379 in Case No. 17-

80881) and the amended plan of reorganization, the general unsecured creditors are entitled to receive their pro-rata portion of the proceeds of the Litigation after all secured and priority claims of Debtor are paid.

9. The IRS filed a claim in the amount of $1,553,827.00. Included in that amount was $496,407.82 for penalties through the date of the commencement of the bankruptcy case, including interest thereon.

10. After receiving nearly $2.5 million as a result of the Litigation, Debtor paid the claim in full, except for the penalties and related interest. Debtor objected to the penalties and interest, asserting that its failure to comply with its statutory obligations was occasioned by "reasonable cause and not due to willful neglect." As part of its objection, Debtor made a request pursuant to 11 U.S.C. § 505, asking this court to determine the legality and amount of the penalties and interest assessed by the IRS pursuant to 26 U.S.C. §§ 6651(a)(1), (a)(2) and 6656(a).

11. By stipulation, the following penalties and interest are at issue:

| | |
|---|---|
| Addition to Tax for Failing to Timely File Returns - I.R.C. § 6651(a)(1) | $ 41,453.53 |
| Addition to Tax for Failing to Timely Pay Tax - I.R.C. § 6651(a)(2) | $228,689.92 |
| Addition to Tax for Failing to Deposit Taxes - I.R.C. § 6656(a) | $203,829.23 |
| Interest on Additions to Tax under I.R.C. §§ 6651(a)(1), 6651(a)(2), and 6656(a) | $20,719.65 |
| Lien Fees | $425.00 |
| Total | $495,117.33 |

12. If the claim is allowed, general unsecured creditors will receive approximately 70% of the value of their respective claims; however, if the claim is disallowed, general unsecured creditors will recover 100% of the value of their

respective claims.

## II. Conclusions of Law and Analysis

The court makes the following conclusions of law pursuant to Fed. R. Bankr. P. 7052. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such.

### A. Jurisdiction, venue, core status and authority to enter final order.

The court has jurisdiction over the claim objection pursuant to 28 U.S.C. § 1334 and by virtue of the reference by the district court pursuant to 28 U.S.C. § 157(a) and LR 83.4.1. Venue is proper pursuant to 28 U.S.C. § 1408. All claims presented to this court are "core" pursuant to 28 U.S.C. § 157(b)(2)(B) (allowance or disallowance of claims against the estate).

The matter before the court involves the claim resolution process and arises from an express provision of the bankruptcy code, 11 U.S.C. § 502(a), and express provisions of Fed. R. Bankr. P. 3001 and 3007. As this matter arises from the bankruptcy case itself, the court may properly exercise its final adjudicative power in a manner consistent with the United States Constitution. *Stern v. Marshall,* 564 U.S. 462, 499 (2011) (to determine whether a bankruptcy court may issue a final order "the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process."); *In re Rodriguez*, 567 B.R. 275, 278 (Bankr. S.D. Tex. 2017) ("As the allowance of a claim is a quintessential issue in bankruptcy law, this Court possesses the necessary constitutional authority to enter a final order in this matter.").

The IRS challenged this court's jurisdiction because the claim objection was filed after the confirmation of the plan. Once a debtor's bankruptcy reorganization plan has been confirmed, bankruptcy jurisdiction under 28 U.S.C. § 1334 ceases to exist except for matters pertaining to the implementation or execution of the plan. *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th Cir. 2001) ("After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan."). In this case, the confirmed plan restricts payments to the holders of "allowed" claims. Therefore, to implement and execute the plan, it is critical to determine the allowance and disallowance of claims. As a result, this court retains post-confirmation jurisdiction. *In re U.S. Brass Corp.*, 301 F.3d 296, 305 (5th Cir. 2002) ("[T]he motion pertains to the plan's implementation or execution and therefore satisfies the *Craig's Stores* test for post-confirmation jurisdiction.").

## B.      Statutory allocations of burden of proof.

The fact that the IRS is asserting federal tax liability in the context of a proof of claim implicates not only the analysis applicable to bankruptcy claims, but also the statutory allocations of burdens of proof imposed by federal tax law.

### 1. Burden of proof under bankruptcy law.

To comply with the Bankruptcy Rules, a proof of claim must "conform substantially to the appropriate Official Form." Fed. R. Bankr. P. 3001(a). A proof of claim filed in accordance with Bankruptcy Rule 3001, like the one filed by the IRS in this case, is "prima facie evidence of the validity and amount of the claim." Fed. R.

Bankr. P. 3001(f). This prima facie validity may be rebutted by the objecting party producing evidence "of a probative force equal to that of the creditor's proof of claim." *In re Fidelity Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988). Once an objecting party produces evidence rebutting a proof of claim, the burden then lies with whichever party it would normally, according to the relevant substantive law. *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 26, 120 S. Ct. 1951, 1958, 147 L. Ed. 2d 13 (2000) ("the burden of proof on a tax claim in bankruptcy remains where the substantive tax law puts it."). Here, the relevant substantive law is federal tax law.

### 2. Burden of proof under federal tax law.

Under federal tax law, tax assessments made by the IRS are presumed to be correct and the taxpayer bears the burden of proving the assessments are in error. *Welch v. Helvering,* 290 U.S. 111, 115 (1933) (IRS determination of tax lability "has the support of a presumption of correctness, and the petitioner has the burden of proving it to be wrong."); *United States v. Fior D'ltalia, Inc.*, 536 U.S. 238, 242 (2002) (tax determinations are "entitled to a legal presumption of correctness."). Although the federal tax code, 26 U.S.C. § 7491(a)(1), shifts the burden of proof to the IRS in certain circumstances where a taxpayer comes forward with contradictory evidence, it does not provide for burden shifting when the dispute involves employment taxes like the taxes at issue in this litigation. *D & R Fin. Servs. Inc. v. Comm'r*, 102 T.C.M. (CCH) 412, n.8 (T.C. 2011) ("although sec. 7491(a) can shift the burden to the IRS in cases involving liability for taxes imposed by subtitle A or B, subtitle C imposes the employment taxes at issue, so sec. 7491(a) cannot shift the burden here."). Nor does

the tax code shift the burden for assessments of penalties against corporate taxpayers. *Son Gee Wine & Liquors, Inc. v. Comm'r*, 105 T.C.M. (CCH) 1407, n. 19 (T.C. 2013) (26 U.S.C. § 7491(c) places the burden of proof on the IRS with respect to an *individual's* liability for a penalty, but that section has no applicability where the taxpayer is a corporation). Simply put, federal tax law puts the burden squarely on a corporate taxpayer when challenging an employment tax penalty and that burden never shifts. As such, Debtor bears the burden of proof on all issues before the court.

**C.    Employers have a statutory duty to timely file returns, pay taxes, and make employment tax deposits.**

The federal tax code requires employers to withhold from an employee's wages the employee's share of federal social security, Medicare, and income taxes, and to pay those withheld sums to the IRS. *See* 26 U.S.C. §§ 3102(a), 3402(a). These taxes are often referred to as "trust fund" taxes because the employer holds them in trust for the benefit of the United States. *See Slodov v. United States*, 436 U.S. 238, 242–3 (1978) (*citing* 26 U.S.C. § 7501(a)). Trust fund taxes are for the exclusive use of the United States and are not to be used to pay the employer's business expenses, including salaries, or for any other purpose. *See* 26 U.S.C. §§ 3102(b), 3403, & 7501(a).

**D.    A taxpayer who fails to timely file tax returns, fails to make employment tax deposits, and fails to pay taxes is subject to mandatory penalties pursuant to 26 U.S.C. §§ 6651 and 6656.**

The time and frequency of deposit and payment of FICA taxes are prescribed by statute and regulation. If an employer-taxpayer fails to adhere to these statutory deadlines, it is subject to penalties. 26 U.S.C. § 6651(a)(1) imposes a penalty on taxpayers who fail to file required returns. 26 U.S.C. § 6651(a)(2) imposes a penalty

on taxpayers who fail to pay the amount shown as due on any tax return when the return is filed. 26 U.S.C. § 6656(a) imposes a penalty on taxpayers who fail to deposit employment taxes in a government depository on the prescribed date.

**E. A taxpayer may escape the penalties by carrying a heavy burden of establishing that its failure to comply with its statutory obligations did not result from willful neglect and that its failure was due to reasonable cause.**

Congress realized there may be a limited set of circumstances in which assessment of these penalties might be inappropriate. Therefore, Congress provided that the penalties are not applicable if the employer-taxpayer shows that its failure to timely file, pay or deposit is due to reasonable cause and not willful neglect. *See* 26 U.S.C. §§ 6651(a) & 6656(a). To escape the penalties, the taxpayer bears the "heavy burden" of proving both (1) that the failure did not result from willful neglect and (2) that the failure was due to reasonable cause. *See United States v. Boyle,* 469 U.S. 241, 245 (1985).

Willful neglect and reasonable cause are not defined under the federal tax code. Willful neglect has been defined as "a conscious, intentional failure or reckless indifference." *Boyle,* 469 U.S. at 245. Reasonable cause usually exists when a taxpayer exercises "ordinary business care and prudence" in determining its tax obligations but is unable to comply with those obligations. *Boyle,* 469 U.S. at 246; 26 C.F.R. § 301.6651-1(c)(1). "Congress obviously intended to make absence of fault a prerequisite to avoidance of the late-filing penalty." *Boyle,* 469 U.S. at 247, n. 4. Therefore, a taxpayer must prove that such failure "was the result neither of carelessness, reckless indifference, nor intentional failure." *Id.*

**F.   The mandatory penalties imposed by 26 U.S.C. § 6651 for failure to file tax returns should not be abated because Debtor did not offer any legitimate reason for its failure.**

For the failure-to-file penalty, the Tax Regulations explain that a "delay" in filing is "due to a reasonable cause" if "the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time." 26 C.F.R. § 301.6651-1(c)(1).

In this case, Debtor argued that its financial difficulties prevented it from *filing* its payroll tax returns on time.  Although Debtor's financial difficulties may well have affected its ability to pay and to deposit taxes, they certainly had no effect on its ability to file a tax return. In fact, Debtor offered no legitimate reason for its failure to file, attempting instead to conflate the failure to file penalties with its rationale for failing to pay and to deposit its payroll taxes in a timely manner. The Fifth Circuit has previously rejected such rationale.  *Staff IT, Inc. v. United States*, 482 F.3d 792, 801 (5th Cir. 2007) ("Debtor's case is not one in which its financial difficulties prevented it from filing its tax returns, regardless of any inability to pay or to deposit—if such a case even exists."). Simply put, Debtor failed to satisfy its "heavy burden" of proving that it exercised ordinary business care and prudence with respect to fulfilling its statutory obligation to timely file its tax returns.

**G.   The mandatory penalties imposed by 26 U.S.C. § 6651 for failure to pay taxes should not be abated because Debtor failed to prove that it exercised ordinary business care and prudence and that nevertheless it was unable to pay the tax or would suffer undue hardship.**

For failure-to-pay situations, the Treasury Regulations shed light on what constitutes reasonable cause to avoid liability for the penalties imposed by 26 U.S.C.

§6651(a)(2) -

> A failure to pay will be considered to be due to reasonable cause to the extent that taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship (as described in § 1.6161-1(b) of this chapter) if he paid on the due date.

26 C.F.R. § 301.6651-1(c)(1).

As is clear from the language, this provision is conjunctive rather than disjunctive. That is, a taxpayer who wishes to take advantage of this exemption must satisfy *both* prongs - that he "exercised ordinary business care and prudence" *and* that "nevertheless" he was unable to pay the tax or would suffer an undue hardship. In making this determination, consideration must be given to the taxpayer's "financial situation," including the taxpayer's expenditures compared to his income. 26 C.F.R. § 301.6651-1(c)(1). Consideration must also be given to "the nature of the [unpaid] tax." 26 C.F.R. § 301.6651-1(c)(2).

When it comes to trust fund taxes, courts disagree about whether financial distress can be reasonable cause for late payment. The Sixth Circuit addressed this issue in *Brewery, Inc. v. United States,* 33 F.3d 589 (6th Cir. 1994). In that case, a corporate taxpayer incurred huge cost overruns while remodeling a restaurant. As a result of unanticipated additional expenses, the corporation then incurred operating losses and had a negative cash flow. The taxpayer argued this situation provided reasonable cause for its nonpayment of employment taxes. The court rejected that contention and adopted a per se rule. Under the bright-line test, financial difficulties can never constitute reasonable cause to excuse a nonpayment of withholding taxes.

In contrast, the Second, Third, Seventh, and Ninth Circuits rejected the bright-line test and, instead, adopted a "multi-factor" test which requires an examination of all facts and circumstances to determine whether financial hardship may constitute reasonable cause for abatement of penalties for nonpayment of taxes. See, *Diamond Plating Co. v. United States*, 390 F.3d 1035 (7th Cir. 2004) (reasonable cause was not shown because the corporation favored creditors and its officers over the government); *Synergy Staffing, Inc. v. United States*, 323 F.3d 1157 (9th Cir. 2003) (reasonable cause was not shown where taxpayer failed to come forward with evidence of what funds it had on hand each time payroll tax was due, and failed to produce evidence of how it spent those funds in lieu of paying its taxes); *Van Camp & Bennion v. United States*, 251 F.3d 862, 867 (9th Cir. 2001) (holding that financial hardship may constitute reasonable cause and stating: "If the potential ruin of a corporation is not relevant, then the reasonable cause exception is virtually meaningless."); *E. Wind Indus., Inc. v. United States*, 196 F.3d 499 (3rd Cir. 1999) (reasonable cause existed when a taxpayer, who depended only on government contracts from the Department of Defense for business, refused to pay bribes to corrupt officials to win contracts, causing the taxpayer to be unable to pay its rent, its suppliers, or its employees' health premiums or union dues and continue to operate with minimal staffing as part of an investigation of the corrupt officials); *Fran Corp. v. United States*, 164 F.3d 814 (2nd Cir. 1999) (reasonable cause was not shown because the corporation extended a personal loan to its president; paid monthly sums

to him for rent; and made expenditures for golf outings, hockey tickets, dinner dances, and repairs on a Porsche).

In *Staff IT*, the Fifth Circuit expressly refused to take a position regarding the circuit split:

> We acknowledge the existence of the circuit split on this issue, but need not—and therefore do not—resolve this issue today. This is because, under either the bright-line rule or the multi-factor test, S.I.'s claim for abatement of penalties fails. Thus, for purposes of this appeal, we assume without granting that the multi-factor test applies and proceed to analyze S.I.'s claim accordingly.

*Staff IT, Inc.*, 482 F.3d at 800.

As a result, this court will first determine whether Debtor can succeed under the multi-factor test. If it fails that test, this court will not consider the bright-line rule.

In applying the "multi-factor" test to determine whether a taxpayer exercised ordinary business care for failure to pay or deposit situations, the Fifth Circuit stated the "primary factors" to consider are:

> (1) the taxpayer's favoring of other creditors over the government, which weighs against a finding of reasonable cause, and (2) the taxpayer's willingness to decrease expenses and personnel, which weighs in favor of a finding of reasonable cause.

*Staff IT*, 482 F.3d at 801.

With respect to these two "primary factors," Debtor focuses primarily on the second factor (willingness to decrease expenses and personnel) while minimizing the first factor (favoring of other creditors over the government). Like the taxpayer in *East Wind,* Debtor argues that it was dependent on government funding for adequate

cash flow, and that the sudden recoupment of over $6 million by the government for alleged Medicare overpayments caused it to experience severe financial difficulties. In response to its financial difficulties, Debtor argues that it downsized its business operations, reduced the overall number of employees, reduced compensation paid to certain employees, paid only its essential creditors, and reduced its geographical presence. Debtor's owner-officer testified that during the period of financial difficulties, he "robbed Peter to pay Paul" by transferring money from Debtor to its affiliates and vice versa to keep the companies afloat while Debtor attempted to resolve its dispute with Medicare.

Debtor also argues that it was unable to make additional reductions in the number of employees because it provided home care for vulnerable populations in rural Louisiana which required a large number of employees to deliver services in places far away from its corporate office. Likewise, Debtor contends that it could not have delayed payment to many of its creditors as they were providing essential services to its clients/patients. Finally, Debtor argues that it had insufficient funds to simultaneously pay its reduced workforce, its essential creditors and its payroll taxes. Given that reality, Debtor opted to pay its workforce and creditors because if it had ceased operations, it would have lost its Medicare provider status which, in turn, would have resulted in the dismissal of the Litigation as only licensed providers can challenge an overpayment recovery. In short, Debtor argues that if it wanted to pursue the Litigation (which ultimately resulted in a recovery of nearly $2.5 million), it had no choice but to use the trust fund taxes to finance its business operations.

Notwithstanding Debtor's arguments, the two "primary factors" of the multi-factor test weigh against a finding of reasonable cause. With respect to the first factor (favoring of other creditors over the government), the evidence clearly establishes that Debtor did not prioritize the payment of payroll taxes. Debtor consistently chose to pay other creditors before the IRS. When there was choice between paying the payroll taxes or paying other bills, Debtor chose to pay other bills. With respect to the second factor (willingness to decrease expenses and personnel), the evidence is a mixed bag as it does not clearly depict the austerity that Debtor portrays. While the evidence supports the notion that Debtor reduced spending in certain areas, the evidence also shows that Debtor continued to spend lavishly in other areas during the period in which it failed to pay or deposit its employment taxes, including:

a. paying $839,435.00 to its owner-officer in preference to its payroll tax obligations (Cr. Ex. 8, Form 1125-E for 2014-2017);[1]

b. loaning $1,697,689.00 to its insider-affiliates in preference to its payroll tax

---

[1] According to Debtor's federal and state income tax returns, Debtor paid compensation to its owner-officer: $375,785 in 2014, $375,785 in 2015, $87,865 in 2016 and nothing in 2017. The tax returns were executed under penalty of perjury by the owner-officer and serve as attestations of income received and expenses incurred, including amounts paid to officers. At trial, the owner-officer testified that he could not recall whether he received the compensation reflected in the tax returns. Another member of Debtor's management testified the owner-officer did not receive all of the compensation reflected in the tax returns because on many occasions the owner-officer was unable to negotiate his payroll checks due to insufficient funds or, alternatively, he "put the money back" into Debtor's coffers during periods of financial difficulties. The witness, however, did not provide any specific information as to how much money the owner-officer received from Debtor or how much "he put back." Also, Debtor offered no explanation as to why it would deduct the owner-officer's compensation for tax purposes if it had not been paid. Considering the tax returns and the lack of evidence to contradict them, this court concludes that Debtor paid its owner-officer the amounts shown in the tax returns. This court cannot excuse Debtor's use of trust fund taxes to pay its owner-officer $839,435, an amount which far exceeds the penalties at issue. It is not remotely acceptable for any employer to use trust fund taxes to pay operating expenses, much less pay a highly compensated insider. For this reason alone, this court has a sufficient basis to conclude that Debtor failed to exercise ordinary business care and prudence.

obligations, including advancements of $543,164.00 from 2014-2017 (Cr. Ex. 8, Form 1120S, Schedule L, line 18 and supporting statements for 2014-2017, *Cf.* 001815 with 001984);

c.  donating $16,536.00 to charitable organizations in preference to its payroll tax obligations (Cr. Ex. 8, Form 1120S for 2014-2015, Statement 5);

d.  paying promotional expenses, meals and entertainment expenses, marketing expenses and other operating expenses in preference to its payroll tax obligations (Cr. Ex. 8, Form 1120S for 2014-2017, Statement 3);

e.  paying rent to an insider-affiliate in preference to its payroll tax obligations (Cr. Ex. 10);

f.  allowing its owner-officer to use the company credit cards to pay personal expenses, including expenses incurred during a vacation in Mexico, and then failed to seek reimbursement from its owner-officer (Cr. Ex. 12, p. 326);

g.  expanding its business operations through the creation of a new affiliate, Serenity Health Care, which purchased two ongoing home health businesses (Debtor Ex. 11, Disclosure Statement, docket 292, p. 7); and

h.  reopening an office which it had previously closed.

The Treasury Regulations state that a taxpayer who "incurs lavish or extravagant living expenses" such that his assets and income are not sufficient to pay his tax generally would not be considered to have exercised ordinary business care and prudence. 26 C.F.R. § 301.6651-1(c)(1). Debtor's lavish expenditures, particularly its generous compensation paid to its owner-officer and its large loans to its affiliates,

simply do not evidence a willingness to decrease its expenses. As such, this court concludes that the second primary factor of the "multi-factor" test weighs heavily against finding reasonable cause.

This court's conclusion that Debtor failed the "multi-factor" test is consistent with the Fifth Circuit's ruling in *Staff IT,* 482 F.3d at 801, which considered whether reductions in spending, favoring other creditors, and the terrorist attacks of September 11th were enough to constitute reasonable cause. The Fifth Circuit determined that because the employer-taxpayer paid for its operating expenses in preference to its payroll tax obligations and paid other creditors, such as contractors and employees, the circumstances did not rise to the level of reasonable cause. Like the Fifth Circuit, this court will not excuse a taxpayer from penalties where, as here, it relegates its obligations to the government to those owed to its other creditors and its owner.

Other courts have routinely rejected a claim of financial difficulties as an excuse for a failure to deposit taxes if there is evidence that the affected taxpayer did not reduce other expenditures. In *PARCC Health Care, Inc. v. U.S.*, 238 F. Supp. 2d 435 (D. Conn. 2002), for example, the court rejected a contention that reasonable cause existed based upon financial problems when the evidence otherwise showed that the owner of a nursing home met its other financial obligations during the relevant time period; did not reduce salaries; made its rental payments; and paid entertainment, travel, automobile, and education expenses. Likewise, in *Q.E.D., Inc. v. U.S.*, 55 Fed. Cl. 140 (2003), the court determined that the failure to deposit penalty

could not be abated when there was evidence that the corporate taxpayer paid approximately $4 million in invoices submitted by companies that were owned in significant part by taxpayer's majority shareholder and the taxpayer's president himself during the same period of time when the taxpayer was not timely paying its employment taxes. See also, *ABL & Assocs. Plumbing, LLC v. United States*, 2019 WL 2221588 (E.D.N.C. May 21, 2019) (concluding that taxpayer failed to establish undue hardship because it failed to show it owed any money to creditors besides its owners or that it made any payments to any creditors).

Moreover, a taxpayer seeking to avoid penalties due to an undue financial hardship must "come forward with evidence of what funds it did have on hand each time a payroll tax was due" and "produce evidence of how it spent those funds in lieu of paying its taxes." *Synergy Staffing, Inc. v. United States,* 323 F.3d 1157, 1160 (9th Cir. 2003). In this case, Debtor did not attempt to show what funds it had on hand *each* time a payroll tax or deposit was due. Although Debtor produced evidence indicating that its financial condition was impaired during the relevant time period due to the Medicare recoupment/repayment dispute, it failed to provide evidence of its precise financial condition *each* time a payroll tax or deposit was due. Debtor also failed to produce evidence of how it spent its available cash-on-hand in lieu of paying its taxes on each due date. Determination of a taxpayer's financial condition on the date each deposit or tax was due requires a fact-intensive review of the taxpayer's records surrounding each due date. Debtor's failure to provide the type of detailed and itemized information required for this type of snapshot determination is fatal to

its hope of establishing reasonable cause.

## H. The mandatory penalties imposed by 26 U.S.C. § 6656 for failure to deposit should not be abated.

For failure-to-deposit situations under 26 U.S.C. § 6656, the Treasury Regulations neither define nor explain "reasonable cause," but they explain that the IRS will generally waive the requisite penalty if a taxpayer's failure to deposit was "inadvertent," 26 C.F.R. § 6656–1(a)(1)(i), requiring that determination of inadvertence must be "based on all the facts and circumstances." *Id.* § 301.6656–1(a)(2).

With respect to the "inadvertent" standard, the Fifth Circuit noted:

It is unclear whether the "inadvertent" standard set forth for § 6656 penalties is identical to the "ordinary business care" standards set forth for §§ 6651(a)(1) and (2) penalties. We need not, however, decide this issue. Whether we determined the "inadvertent" standard was different from or identical to the "ordinary business care" standard, we would still conclude that S.I. lacked reasonable cause in satisfying its payroll tax obligations. Thus, for purposes of this opinion, we will assume that the standards are the same.

*Staff IT*, 482 F.3d at 800, n. 24.

Like the Fifth Circuit, this court will assume that the "inadvertent" standard and the "ordinary business care" standard are the same. Nevertheless, whether this court believes the "inadvertent" standard is different from or identical to the "ordinary business care" standard, this court would still conclude that Debtor lacked reasonable cause in satisfying its payroll tax obligations. Debtor failed to satisfy its burden to show reasonable cause or inadvertence.

## IV. <u>Conclusion</u>

In objecting to the claim filed by IRS for penalties assessed due to failure to file, pay or deposit taxes, Debtor failed to carry its burden. The IRS filed a proof of claim that conformed to the requirements of Bankruptcy Rule 3001. Having done so, the proof of claim is entitled to the presumptive validity attributed to it under Bankruptcy Rule 3001(f). Moreover, under applicable non-bankruptcy law, the claim is entitled to a presumption of correctness.

Debtor failed to exercise ordinary business care and prudence in the timely discharge of its payroll tax obligations. Debtor's failure to do so was not the result of a reasonable cause within the meaning of 26 U.S.C. §§ 6651(a)(1), (a)(2) and 6656(a). As a result, the proof of claim filed by the IRS retains its presumption of validity.

For the reasons stated herein, the court **<u>OVERRULES</u>** the claim objection. The claim is allowed as modified by the amount reflected in the stipulation. A separate order overruling the claim objection will be entered.

###